NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Bergen Regional Medial Center, L.P., | : |
| Plaintiff, | : **OPINION** |
| v. | : Civ. No. 05-2596 (WHW) |
| Health Professionals and Allied Employees Union and Anne Twomey, | : |
| Defendants. | : |

### Walls, District Judge

Defendants Health Professionals and Allied Employees Union ("HPAE" or "Union") and Anne Twomey (collectively "Defendants"), move to dismiss the complaint and plaintiff Bergen Regional Medical Center L.P.'s ("BRMC" or "Medical Center") cross-moves for remand. Pursuant to Rule 78, both motions are decided without oral arguments. Plaintiff's cross-motion for remand is denied and Defendants' motion to dismiss is granted.

### FACTS AND PROCEDURAL BACKGROUND

This dispute centers around the alleged conduct of defendants HPAE and Anne Twomey who allegedly interfered with BRMC's contractual relationship with nonparty Bergen County Improvement Authority ("BCIA") and breached the implied covenant of good faith and fair dealing that existed in the collective bargaining agreement between BRMC and HPAE.

The HPAE is a labor union representing approximately 425 registered nurses and other non-nursing professionals employed by BRMC. Anne Twomey is the President of HPAE. The BRMC had for 80 years, been owned and operated as a public hospital by the County of Bergen.

**NOT FOR PUBLICATION**

However, on March 15, 1998, the county adopted a "Repositioning Plan" which placed the hospital under the management and control of BRMC. As part of the Plan, the county transferred its state license to operate the hospital and the former hospital's business assets and real property to BCIA for a period of nineteen years. On the same day, BCIA entered into a lease and operating agreement with Solomon Healthcare Group, LLP wherein BCIA subleased the business assets and real property to Solomon. Solomon in turn assigned those interests, rights and obligations to BRMC. Most of the employees at the former publicly owned hospital were terminated and then rehired by BRMC, a private employer. Those employees included registered nurses and non-nursing professionals who were represented by HPAE. HPAE and BRMC entered into a series of collective bargaining agreements, the latest of which runs from June 1, 2004 until May 31, 2007.

Unfortunately, securing the most recent collective bargaining agreement proved a difficult task. When the parties failed to reach an agreement, HPAE and its members went on strike. Union members picketed the Medical Center, which in the mean time, substituted the HPAE employees with replacement nurses. Various allegations regarding the standard of care provided by those replacement nurses were asserted by both sides and both parties alleged unfair labor practices with the National Labor Relations Board ("NLRB"). A strike was eventually averted by the appointment of a federal mediator and a memorandum of agreement was signed on June 22, 2005 which resolved the issues between the Union and the Medical Center. In addition, both sides agreed to drop their respective claims before the NLRB.

**NOT FOR PUBLICATION**

Since that time however, the BRMC alleges that HPAE and defendant Anne Twomey have made it their public goal to oppose the privatization of the Medical Center by attempting to break the Lease and Operating Agreement between BRMC and BCIA. In responding to the allegedly tortious actions of Defendants, the BRMC filed suit against HPAE and Anne Twomey in Superior Court of New Jersey, Bergen County on April 20, 2005. That Complaint alleges that (1) HPAE tortiously interfered with business relationships and prospective economic advantage; (2) HPAE committed tortious interference by way of negligent prosecution; (3) HPAE committed tortious interference by way of defamatory and misleading statements; (4) Anne Twomey tortiously interfered with BRMC's business relationships by way of defamatory and misleading statements; and (5) HPAE breached the covenant of good faith and fair dealing implicit in the parties' collective bargaining agreement. Defendants timely removed plaintiff's complaint to this Court on May 18, 2005.

Defendants presently move this Court for dismissal, pursuant to Fed. R. Civ. P. 12(b)(6), of plaintiff's first fount counts of the complaint as preempted by Sections 7 and 8 of the Labor Management Relations Act, 29 U.S.C. §§ 157, 158 ("LMRA" and "Sections 7 or 8") and seek dismissal of Count Five of the Complaint as preempted by Section 301 of the LMRA, 29 U.S.C. § 185(a) ("Section 301"). In response, plaintiff cross-moves for remand.

## STANDARD

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn

-3-

**NOT FOR PUBLICATION**

therefrom, and to view them in the light most favorable to the non-moving party. Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

While a court will accept well-plead allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegation. See Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n. 2 (1977). Moreover, the claimant must set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist. See Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. See Sentinel Trust Co. v. Universal Bonding Ins. Co., 316 F.3d 213, 216 (3d Cir. 2003); see also 5A Wright & Miller, Federal Practice & Procedure § 1357 at 299 (2d ed. 1990).

With regard to remand of a case removed to federal court, 28 U.S.C. §1447(c) provides that:

> If at any time before final judgment, it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorneys' fees, incurred as a result of the removal.

When confronted with a motion to remand, the removing party has the burden of establishing the propriety of removal. Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir.

**NOT FOR PUBLICATION**

1990), cert. denied, 498 U.S. 1085 (1991). Moreover, "removal statutes 'are to be strictly construed against removal, and all doubts resolved in favor of remand.'" Id. at 111 (citations omitted).

## DISCUSSION

### A. Motion to Remand

Before addressing the merits of Defendant's motion to dismiss, the Court will first address plaintiff's motion to remand to ascertain whether it has subject matter jurisdiction of this matter. Plaintiff is correct in its assertion that, absent diversity jurisdiction, federal court subject matter jurisdiction is appropriate when the complaint pleads a federal cause of action. Louisville & Nashville R.R. v. Mottley, 211 U.S. 149 (1918). This requirement has lead courts to apply the "well pleaded complaint rule" which makes the plaintiff the "master of his claim," Caterpillar, Inc. v. Willaims, 482 U.S. 386 (1987), and allows for removal only where a federal question appears on the face of the complaint. Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1 (1983).

However, plaintiff does not recognize, or fails to acknowledge, the exception to the general requirement that federal court jurisdiction must be alleged on the face of the complaint. In cases where Congress so pervasively occupies a field, any claim that comes within the scope of federal law is deemed to "arise under" federal law notwithstanding the nature of the claim. Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987). The Supreme Court has recognized this concept of "complete preemption" in very few federal statutes. In Avco Corp., v. Machinists, 390 U.S. 557 (1968), however, the Supreme Court recognized that a state law action

**NOT FOR PUBLICATION**

that arises under Section 301 of the LMRA is one that will be completely preempted and will vest the federal courts with subject matter jurisdiction.[1]

As a preliminary matter, the Court notes that plaintiff has referred to several cases without distinguishing between the concept of "complete preemption" and "ordinary preemption." Federal question jurisdiction is only available to a district court when a defendant can demonstrate that plaintiffs state law claims are completely preempted under Section 301 of the LMRA. In other words, if a "plaintiff, in its well pleaded complaint . . . plead[s] an action that requires interpretation of [a] collective bargaining agreement," then the complaint is completely preempted and the district court retains jurisdiction to hear the matter. Berda v. CBS, Inc., 881 F.2d 20, 25 (3d Cir. 1989).

In contrast, Sections 7 and 8 of the NLRA provide Defendants with a preemption defense to plaintiffs claims such that those claims are within the exclusive jurisdiction of the NLRB. However, Section 7 and 8 preemption does not provide a federal district court with federal question jurisdiction. Although such a claim might preempt any state law claim and provide for its dismissal, that claim can be heard concurrently by either a state court or federal court. It is not

---

[1] Section 301(a) of the LMRA states that:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

**NOT FOR PUBLICATION**

a claim exclusively within the jurisdiction of the federal court and so is not a basis for removal jurisdiction. See Kline v. Security Guards, Inc., 386 F.3d 246, 262-63 (3d Cir. 2004); Briones v. Bon Secours Health System, 69 Fed. Appx. 530, 534-35 (3d Cir. 2003).

Plaintiff, in the first four counts of its complaint, has alleged various claims of tortious interference by the defendant Union and its President relating to the contractual relationship between plaintiff and a third-party. Such claims fall outside the complete preemption application of Section 301 which requires a dispute relating to the violation of a collective bargaining agreement. See 29 U.S.C. § 185(a). As such, plaintiff's first four counts do not provide this Court with federal question jurisdiction.

However, plaintiff's fifth cause of action, which charges a breach of the implied covenant of good faith and fair dealing, relates to the collective bargaining agreement between the Medical Center and the Union. Specifically, plaintiff's complaint alleges that the collective bargaining agreement contains "implied covenants of good faith and fair dealing," (Compl. ¶ 57) and that HPAE's tortious actions "represent[ed] significant breaches of the covenants of good faith and fair dealings implied in the Agreement between the parties." (Id. ¶ 58.) Plaintiff argues that these passing references to the collective bargaining agreement and any interpretation thereafter are wholly independent from its claim of breach of an implied duty. Citing Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396 (1997), plaintiff argues that an action for breach of implied covenant of good faith is independent from the terms of the collective bargaining agreement and does not implicate complete preemption under Section 301.

**NOT FOR PUBLICATION**

While plaintiff's argument has functional appeal, it is contrary to the great weight of authority. Most notably, the Supreme Court rejected a very similar argument in Allis-Chalmers Corp. v. Lueck, 471 U.S. 202 (1985). In Lueck, the Supreme Court addressed whether the Wisconsin Supreme Court had improperly reversed a lower court's rendering of summary judgement for contractual claims based on good faith because of preemption by Section 301. The Lueck court found that the state court had erred and that "[b]ecause the right asserted not only derives from the contract, but is defined by the contractual obligation of good faith, any attempt to assess liability here inevitably will involve contract interpretation." Id. at 218.[2] In addition, the Lueck court rejected the Wisconsin Supreme Court's assertion that a determination of bad faith was irrelevant to a specific violation of the labor contract such that an examination of the contract would not be necessary, and foreclosing preemption under Section 301. Id. at 213-19. In sum, the Supreme Court recognized that the pre-emptive effect of Section 301 was broad and necessarily should extend beyond claims that allege contract violations. See id. at 210-11 (noting that "questions [under Section 301] relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law"). Moreover, the Lueck court held that "when the resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a

---

[2] The Lueck court, in addressing the preemptive effect of Section 301, addressed both the complete and ordinary preemptive effect of Section 301. Id. As discussed later in this opinion, Section 301 also defensively preempts plaintiff's fifth count regarding breach of the implied covenant of good faith and fair dealing and that count should be dismissed.

**NOT FOR PUBLICATION**

§301 claim, or dismissed as pre-empted by federal labor-contract law." Id. at 220 (citations omitted).

Following Lueck, this and other courts have recognized complete preemption of claims under Section 301 based on the implied covenant of good faith and fair dealing that adhere to a collective bargaining agreement. See Pagano v. Bell Atlantic-New Jersey, Inc., 988 F. Supp. 841, 846-47 (D.N.J. 1997) (Walls, J.); Devoy v. Tricomm Service, Inc., 2002 WL 3164081 (D.N.J. Oct. 15, 2002); Newberry v. Pacific Racing Assoc., 854 F.2d 1142, 1147-48 (9th Cir. 1988); Garley v. Sandia Corp., 236 F.3d 1200, 1212-13 (10th Cir. 2001). In Pagano, this Court dismissed several claims that alleged violations of the implied covenant of good faith and fair dealing as preempted under Section 301. Pagano, 988 F. Supp. at 847. In particular, the Court noted that a resolution of plaintiff's state law claims for breach of implied covenant of good faith related to the termination of his employment, would have required the Court to interpret and analyze the collective bargaining agreement. Id. The Court further determined that allowing such claims to be brought "would not comport with the Supreme Court's explicit directive to resolve disputes concerning collective bargaining agreements under federal labor law instead of state law." Id. (citing Teamsters v. Lucas Flour Co., 869 U.S. 95, 103 (1962)).

Given the law on this point, plaintiff's fifth claim for breach of the implied covenant of good faith and fair dealing that relates to the parties' collective bargaining agreement falls squarely within the preemptive effect of Section 301 of the LMRA and provides this Court with federal question jurisdiction. Here, plaintiff's fifth claim relates to the parties' collective bargaining agreement and would require the Court to look to the agreement to determine the

**NOT FOR PUBLICATION**

scope of the implied duty that was owed, resulting in an "analysis of the terms of an agreement made between the parties in a labor contract." Lueck, 471 U.S. at 220. As such, complete preemption applies.

In further support of its motion to remand, plaintiff points the Court to a recent decision where the district court remanded the case to state court based on a lack of federal question jurisdiction. Sutter Health v. UNITE HERE, 2005 WL 1925910 (E.D. Cal. Aug. 10, 2005). However, Sutter is not availing to plaintiff's current motion to remand because the conduct alleged in that case, unlike here, did not implicate a collective bargaining agreement between the parties. Id. at *4. Indeed, no such agreement existed, and plaintiff had argued that federal question jurisdiction existed based on a "secondary boycott" by the defendants as governed by Section 303 of the LMRA, 29 U.S.C. § 187 and based on defendant's violations of Section 8. Id. at *3. The Sutter court went to great lengths to explain that claims made pursuant to Section 303 and Section 8 do not implicate the complete preemption doctrine which provides the federal courts with subject matter jurisdiction, and that only Section 301(a) has "such extraordinary preemptive force." Id. at *4. The court chastised defendant's failure to recognize the difference between complete and ordinary preemption, and stressed the need to separate the two preemption doctrines. Id. The Sutter court's admonitions are applicable here, as plaintiff has not adequately separated the tests for ordinary and complete preemption for purposes of its motion to remand.

Because this Court is properly vested with jurisdiction to hear this matter, plaintiff's motion for remand must be denied.

NOT FOR PUBLICATION

## B. Motion to Dismiss

Having determined that the Court has jurisdiction to hear this case, the Court now turns to Defendants' motion to dismiss plaintiff's various claims based on ordinary preemption under Sections 7, 8 and 301 of the LMRA.[3]

### 1. Section 301 Preemption of Count V

As discussed, Section 301 offers complete preemption such that federal courts are vested with federal question jurisdiction. However, Section 301 also provides a defense of ordinary preemption. See Textile Workers Union of Am. v. Lincoln Mills of Ala., 353 U.S. 448, 451 (1957) (noting that besides creating jurisdiction in federal courts, Section 301 "authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements"). That is, when "a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract" than those claims are preempted by federal law and should be dismissed. Lueck, 471 U.S. at 220; see also Pagano, 988 F. Supp. at 846-47. Having previously determined that plaintiff's fifth count for breach of the implied covenant of good faith and fair dealing that adhered to the collective bargaining agreement between the parties was substantially dependent on an analysis of the terms of the

---

[3] Where a dispute arises over conduct that implicates Sections 7, 8 or 301 of the LMRA, the matter is subject to the exclusive jurisdiction of the NLRB. See generally Golden State Transit Corp. v. Los Angeles, 493 U.S. 103, 108 (1989). In general, federal courts are without jurisdiction to rule on Section 7, 8 and 301 disputes before the NLRB has addressed the issue. Crown Clothing Co. v. Papale, 854 F. Supp. 316, 320-21 (D.N.J. 1994). This rule applies broadly to all matters "arguably subject" to Sections 7, 8, or 301 which must first go before the NLRB to initially determine proper jurisdiction. San Diego Building Trades Council v. Garmon, 359 U.S. 236, 244-45 (1959) (noting that such NLRB determinations are "essential to the administration" of the NLRA).

**NOT FOR PUBLICATION**

agreement for purposes of establishing subject matter jurisdiction, the Court finds that this claim is preempted and dismisses the fifth count of the complaint.

### 2. Section 7 and 8 Preemption of Counts I, II and III

Defendants also argue that plaintiff's tortious interference claims in counts one, two and three, are preempted by section 7[4] and 8[5] of the NLRA under the principles of Garmon

---

[4] Section 7 provides:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

29 U.S.C. § 157

[5] Sections 8(a) and 8(b) define certain employer and labor conduct as unfair labor practices. Because Section 8(a) relates to unfair practices by employer, it is not relevant to the Medical Center's claim against the Union. Section 8(b), however provides, *inter alia*:

> It shall be an unfair labor practice for a labor organization or its agents--
> (1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title . . . (B) an employer in the selection of his representatives for the purposes of collective bargaining or the adjustment of grievances;
>
> (4) (I) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is--
>
> (A) forcing or requiring any employer or self-employed person to join any labor or employer organization or to enter into any agreement which is prohibited by

**NOT FOR PUBLICATION**

preemption, a doctrine first outlined in San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959). The Garmon doctrine of preemption "protects the exclusive jurisdiction of the NLRB over unfair labor practice proceedings; accordingly, if a cause of action implicates protected concerted activity under section 7 of the NLRA or conduct that would be prohibited as an unfair labor practice under section 8 of the NRLA, the cause of action is preempted." Voilas v. General Motors Corp., 170 F.3d 367, 378 (3d Cir. 1999); Garmon, 359 U.S. at 242-44. The Supreme Court has further developed the concept in Belknap, Inc. v. Hale, 463 U.S. 491, 498 (1983), noting that:

---

subsection (c) of this section;

(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: Provided, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing;

(c) forcing or requiring any employer to recognize or bargain with a particular labor organization as the representative of his employees if another labor organization has been certified as the representative of such employees under the provisions of section 159 of this title;

(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work:

29 U.S.C. § 158

**NOT FOR PUBLICATION**

> [S]tate regulations and causes of action are presumptively preempted if they concern conduct that is actually or arguably either prohibited or protected by the Act. The state regulation or cause of action may, however, be sustained if the behavior to be regulated is behavior that is of only peripheral concern to the federal law or touches interests deeply rooted in local feeling and responsibility.

While federal courts have recognized narrow exceptions to the Garmon preemption doctrine, namely, state law claims that are of a "peripheral concern" to federal law or claims that have some unique local interest that is so great that preemption would frustrate that interest, Defendants argue that these exceptions are not implicated here.[6] The Court agrees. Support for the fact that plaintiff's claims for tortious interference do not fall within the narrow exceptions recognized by the Supreme Court can be found in the Fourth Circuit's decision in In re Sewell, 690 F.2d 403, 408 (4th Cir. 1982). In Sewell, the court analyzed the various exceptions and held that Garmon preemption applied to a claim for tortious interference under North Carolina law because "[that] conduct does not fall within any of the exceptions cataloged in Sears." Id. (citation omitted). The Sewell court's determination is applicable here, and the Court holds that plaintiff's claims for tortious interference are not exempted from Garmon preemption.

---

[6] "[O]nly the narrowest of exceptions" prevent NLRB preemption. NLRB v. California Horse Racing Board, 940 F.2d 536, 540 (9th Cir.1991). As noted, these exceptions include cases involving issues that do not threaten significant interference with the NLRB's jurisdiction or are of peripheral concern to the NLRB. See, e.g., Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters, 436 U.S. 180 (1978) (action for trespass during picketing); Linn v. United Plant Guard Workers, 383 U.S. 53 (1966) (action for libel against union); Farmer v. Carpenters, 430 U.S. 290 (1977) (action for intentional infliction of emotional distress against union); Automobile Workers v. Russell, 356 U.S. 634 (1958) (action involving violent acts against employee); Youngdahl v. Rainfair, Inc., 355 U.S. 131 (1957) (action involving threats of violent acts against employees); Construction Workers v. Laburnum Constr. Corp., 347 U.S. 656 (1954).

**NOT FOR PUBLICATION**

Defendants argue that the alleged misconduct on the part of HPAE was at least arguably within the protected activities of Section 7 or the prohibited activities of Section 8, and that such claims must be preempted and initially presented to the NLRB. In support of its position that plaintiff's first three counts are preempted under Section 8, Defendants point to Paragraphs 34(a) and (b) of plaintiff's complaint which are part of Count One and subsequently incorporated in Counts Two, Three, and Four. Specifically, subparagraphs (a) and (b) allege that the Union threatened potential employment agencies with retaliation if they provided the Medical Center with employees and the Union threatened to have the immigration status of international nurses, temporarily employed by the Medical Center, revoked. Defendants argue that these allegations arguably fall within the scope of prohibited activities under Section 8(b)(1) and 8(b)(4). Defendants note that before filing this suit, plaintiff filed an unfair labor practice charge with the NLRB that claimed essentially the same conduct as alleged in paragraphs 34(a) and (b) of the complaint as amounting to a violation of (b)(1) and (b)(4) of Section 8. The charge filed with the NLRB was eventually withdrawn and the Board never addressed its merits or the Board's jurisdiction over such claims. However, the charge itself demonstrates that the conduct alleged arguably falls within the jurisdiction of the NLRB pursuant to Section 8. Cf. In re Sewell, 690 F.2d at 408.

Plaintiff attempts to dismiss the NLRB charge as unrelated to its current charges of tortious interference because, as plaintiff views it, the NLRB charge involved the relationship between plaintiff and Defendants, while the current charge involves Defendants' interference with plaintiff's relationship with non-party BCIA. The Court cannot accept this reasoning. It is

**NOT FOR PUBLICATION**

clear that a finding that "state law claims are preempted under Garmon is determined not by the identity of the party against whom the claims are asserted, but rather by the *issues* that those claims require a court to adjudicate." Richardson v. Kruchko & Fries, 966 F.2d 153, 156 (4th Cir. 1992) (emphasis in original); see also Lumber Prod. Indus. Workers Local # 1054 v. West Coast Indus. Relations Ass'n, 775 F.2d 1042, 1049 (9th Cir. 1985) (citing Local 926, Int'l Union of Operating Eng'rs v. Jones, 460 U.S. 669, 682) (1983) (holding that state law is preempted and identity of the party is immaterial when "the conduct relied on to prove a crucial element of the state action is conduct that is arguably covered by the NLRA"). While plaintiff attempts to distinguish the parties involved in the previous NLRB claim compared to the state law claim, this distinction does not abrogate the application of Garmon preemption.

Plaintiff has alleged conduct that, irrespective of the target or intended result, arguably falls within the ambit of conduct that is prohibited by Section 8. Specifically, plaintiff's allegations that Defendants (i) threatened to revoke the immigration status of replacement nurses and (ii) threatened retaliation against employment agencies, could arguably be viewed as conduct on the part of Defendants that is prohibited by Section 8(b). As such, plaintiff's claims in Counts One, Two, and Three are preempted by Section 8.

In addition, plaintiff has alleged conduct on the part of Defendants that arguably could be classified as protected conduct under Section 7. In its complaint, plaintiff alleges that (i) Anne Twomey went to the BCIA offices to ask that their contract with BRMC be terminated; (ii) the Union testified before BCIA that the Medical Center "compromises the safety and dignity of patients;" and (iii) the Union has made unsubstantiated allegations to regulators that has had the

**NOT FOR PUBLICATION**

result of injuring plaintiff. It is arguable that these allegations fall within the protective aura of Section 7 which allows for employees "to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." The Supreme Court has interpreted this protection broadly having found that employees do not "lose their protection under the 'mutual aid or protection' clause when they seek to improve terms and conditions of employment or otherwise improve their lot as employees through channels outside the immediate employee-employer relationship." Eastex Corp. v. N.L.R.B., 437 U.S. 556, 565 (1978). Plaintiff's claims in Counts One, Two and Three arguably arise under the protection afforded by Section 7, and provide additional support for a finding of preemption.

### 3. Section 7 and 8 Preemption of Count IV

Finally, Defendants argue that Count Four of plaintiff's complaint alleging tortious interference on the part of individual defendant Anne Twomey must be dismissed for the same reasons as Counts One, Two and Three. The Court agrees. Regardless of whether defendant Twomey was acting in a representative or an individual capacity, the conduct that plaintiff complains of is essentially duplicative of the conduct alleged in Counts One, Two and Three which are preempted by Sections 7 and 8 of the LMRA. Even assuming Twomey's status was that of an individual acting outside the scope of the Union, the broad preclusive effect of Sections 7 and 8 still apply because, as explained, the focus of the preemption analysis is on the nature of the claim, not which parties were involved. See Richardson, 966 F.2d at 156. Because plaintiff alleges tortious interference by defendant Twomey that arguably implicates Sections 7 and 8, plaintiff's fourth claim must be dismissed.

**NOT FOR PUBLICATION**

Because plaintiff has failed to first pursue the resolution of its claims before the NLRB, this Court is without jurisdiction to entertain the complaint. The complaint is dismissed with prejudice.

**CONCLUSION**

For the reasons stated above, plaintiff's motion for remand is denied; Defendants' motion to dismiss is granted.

William H. Walls, U.S.D.J.